MANOL, Respondent, vs. MOSKIN BROS. INC., Appellant.

*November 12—December 9, 1930.*

48

*W. B. Rubin* of Milwaukee, for the appellant.
For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann*.

ROSENBERRY, C. J.  The defendant's first proposition is that when its employee Cash made the assault upon the plaintiff as found by the jury, he was not as a matter of law acting within the scope of his employment.  No useful purpose would be served by setting out the evidence in great detail.  Whatever happened on the occasion of Cash's visit to plaintiff's home was a continuous affair.  The defendant contends that when the plaintiff succeeded in closing the door, that terminated any effort Cash was making for and on behalf of his employer and that he thereafter stepped aside from his employment and acted for his own purposes and on his own account.  It is considered that the circumstances are not such as to warrant that conclusion.  Plaintiff says that immediately upon closing the door Cash com-

menced to knock and bang upon the door. He says: "After she closed the door and I proceeded to walk downstairs it was about five seconds and she reopened the door." Under the evidence, the case upon this point was clearly for the jury. *Mandel v. Byram,* 191 Wis. 446, 211 N. W. 145.

The defendant's second contention is that the evidence does not sustain the finding of the jury to the effect that the defendant with full knowledge ratified the acts of its employee Cash.

The evidence on behalf of the plaintiff tends to establish the following: that the plaintiff with her husband went to the store of the defendant on Saturday evening and there talked with the manager in charge of the defendant's business; they asked the manager who it was they sent up to the house to collect the bill and who beat up the wife, and were told by the manager that he did not know the name, that he had just started to work that day and on account of what had happened they had fired him; that plaintiff's husband insisted upon the man's name being given so that he might be arrested, but the manager said they knew nothing; that they tried to show to the manager the injuries which the plaintiff had sustained and explain the circumstances, whereupon they were told that was a business place and ordered to get out; thereupon they paid their bill and went to consult a lawyer.

The defendant, on the other hand, claims that the plaintiff came to the defendant's place of business, made a complaint in regard to the collector, and offered to settle if the defendant would cancel the bill owing by Manol and the one owing by Sweet. This the manager refused to do, whereupon they threatened to make trouble and left the place. Cash made a written report of the transaction to his employer, which appears as an exhibit in the case. From that report it appears that the plaintiff was the aggressor; that Cash had done no more than defend himself when the plaintiff

threatened to strike him with the carpet sweeper. It appears as a fact that Cash had been in the employ of the defendant about two years and that the defendant had confidence in him and that he was a trusted employee and that he was continued in his employment. The manager testifies that he did listen to Mrs. Manol's story; that he looked at her arm and was unable to see any bruise or abrasion, and says that had the Manols at that time told him that Cash had kicked the plaintiff, beaten her up and tore her hair, he would have made further investigation, but that nothing of the kind was communicated to him.

In view of the verdict of the jury, we are required to take that view of the evidence which is most favorable to the plaintiff's contentions. From that it would appear that the manager was informed of the assault and of its character, that he would have been further informed but that he refused to listen, and that he made no further investigation or effort to ascertain the truth of the facts. While the evidence which tends to sustain the verdict is far from clear and satisfactory, it cannot be said to be wholly incredible and it is considered that it presented a jury question. The defendant's manager was placed in a difficult position. Managers cannot fire trained and trusted employees every time a customer complains. On the other hand, they cannot shut their eyes to the facts and refuse to be informed in cases where a grievous and malicious assault has been made by their employees. It is quite apparent that the manager did not take much stock in either story, but on the other hand he made no attempt to ascertain the truth and retained Cash without further investigation.

It is next urged that the amount found as compensatory damages is excessive. In view of the fact that there must be a new trial in this case, we shall do no more than say that the compensatory damages are certainly high, considering the disability suffered by the plaintiff.

With respect to the punitory damages the trial court said:

"The court being of opinion that the punitory damages awarded by the jury are excessive and should not exceed three thousand dollars:

"It is ordered that in case the plaintiff shall remit from the punitory damages assessed by the jury the excess of three thousand dollars," etc.

It is apparent that the trial court permitted the punitory damages found by the jury to stand at the highest amount which a jury would in the opinion of the court be warranted in assessing and permitted the plaintiff to take judgment therefor. This was error. If the damages were to stand at the highest amount, then the defendant should have been given the option to permit judgment to go against it. *Campbell v. Sutliff*, 193 Wis. 370, 214 N. W. 374. While in case of compensatory damage the court may, where it is of the opinion that the damages are excessive, prescribe the lowest amount which a jury would find and permit the plaintiff to take judgment therefor, it is considered that that rule does not apply in the case of punitory damages because it is within the discretion of the jury to deny a recovery for punitory damages even though the evidence would sustain a verdict therefor. *Topolewski v. Plankinton P. Co.* 143 Wis. 52, 126 N. W. 554. When the matter of awarding punitory damages is wholly within the discretion of the jury and the verdict is set aside on the ground that as a result of passion and prejudice the jury has found a verdict which is clearly excessive, upon what basis can it be said that a jury properly instructed must exercise its discretion and give exemplary damages in a particular case? Had the element of passion and prejudice been absent, the jury might have concluded that no exemplary damages should be awarded. The situation in relation to compensatory damages is quite different. While different juries might find different amounts of compensatory damages, the elements often being

uncertain and difficult of appraisal, the right being once established, it is not as a practical matter difficult to establish the minimum and maximum. If in the case of the plaintiff the minimum be established and plaintiff accepts it, plaintiff has no cause for complaint nor has the defendant. If the maximum be established and the defendant elects to permit judgment to go against him for that amount, he cannot complain because he has consented thereto. Plaintiff cannot complain because he recovers all that he would be entitled to recover in any event. This, however, cannot be said of punitory damages, the allowance of which is wholly within the discretion of the jury.

The situation in this case requires a new trial, and in view of the situation of the record it is considered that the trial should be upon all the issues in the case.

It is also claimed that the summons and complaint were improperly amended by changing the name of the defendant from Moskin Credit Clothing Company to Moskin Bros. Inc. In view of the affidavit which was filed with the secretary of state on behalf of Moskin Bros. Inc., and the evidence given, it is considered that the amendment was properly allowed.

The defendant also contends that, because of certain remarks made by plaintiff's counsel in the course of the argument to the jury, the judgment should be reversed. Counsel referred to the defendant as a "second-story operator," a term which in common parlance is understood to mean a burglar, thief, or porch climber. Plaintiff's counsel also denounced defendant's method of doing business on the instalment plan, alleged that by the contract entered into between the defendant and its customers "the defendants set themselves above the law," and other statements of like character. Arguments of this character were improper and tended to inflame the jury and arouse in the minds of the jury passion and prejudice. The verdict finding $5,000

punitory damages is a strong indication that the argument had that result. Although the remarks were objected to, they were not ruled upon nor was the jury instructed to disregard them nor counsel in any way reprimanded. Inasmuch as the case must be reversed on other grounds, it is not necessary for us to determine whether this misconduct amounted to prejudicial error, but it is emphatically disapproved.

Other assignments of error are made, but we do not consider that they require separate treatment.

*By the Court.*—Judgment appealed from is reversed and cause remanded for a new trial.